UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                             Plaintiff

v.                                                    Criminal Action No. 3:21-CR-47-RGJ

CEDRIC SMITH                                                        Defendant

* * * * *

**MEMORANDUM OPINION AND ORDER**

Defendant Cedric Smith ("Smith") moves for compassionate release and sentence reduction under 18 U.S.C. 3582(c)(1)(A) and appointment of counsel. [DE 121; 122]. The United States responded, [DE 125] and Smith did not reply. The United States filed a sealed supplement with Smith's Bureau of Prisons records. [DE 127]. This matter is ripe. For the reasons below, Smith's motions [DE 121; 122] and request for counsel are **DENIED**.

## I.     BACKGROUND

On December 7, 2021, Smith was indicted for conspiracy to distribute controlled substances. [DE 32]. Smith ultimately pleaded guilty to this charge pursuant to a Rule 11(c)(1)(B) plea agreement. [DE 94]. On November 16, 2022, this Court sentenced Smith to 78 months in prison followed by five years of supervised release. [DE 110].  He is approximately 60 years old and currently incarcerated at FCI Phoenix with a current proposed release date of August 27, 2027. *See* Bureau of Prisons Inmate Locator website, https://www.bop.gov/inmateloc/ (last visited August 2, 2024).

## II.     ANALYSIS

Smith asserts four grounds for compassionate release and a reduction in sentence: (1) the danger of contracting COVID-19 due to Smith's underlying medical conditions, (2) the Bureau of Prisons ("BOP") is unable to properly care for Smith's medical conditions, (3) Smith is the sole

1

caretaker for his sick and elderly mother, and (4) there are elevated levels of arsenic in Smith's prison's drinking water.

**A. Exhaustion of Administrative Remedies.**

An inmate may seek compassionate release by the district court only after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see generally United States v. Smith*, No. 6:13-CR-34-KKC, 2024 WL 3566697, at *1 (E.D. Ky. July 29, 2024). The exhaustion requirement is mandatory, and the Court is bound to enforce it when it is properly invoked by the government. *United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020). It is the defendant's burden to show that he has exhausted his administrative remedies. *United States v. Pena-Lora*, No. 15-20695, 2020 WL 3886384, at *1 (E.D. Mich. July 9, 2020).

Smith submitted a request for reduction in sentence to the BOP, which was denied by his warden on March 24, 2023. [DE 121-1 at 472]. The United States does not dispute that Smith has satisfied the exhaustion requirement for the first three grounds. Instead, it argues Smith did not raise his argument regarding arsenic in the prisons drinking water in his request to the BOP and has therefore failed to exhaust his administrative remedies on that issue. [DE 125 at 505].

The Sixth Circuit has not addressed whether a defendant has exhausted his administrative remedies under 18 U.S.C. § 3582(c)(1)(A) when the grounds for relief presented in his request to the BOP and in his motion to the Court are different. *See United States v. Gough*, No. 3:96-CR-55-CRS, 2022 WL 586782, at *1 (W.D. Ky. Feb. 25, 2022). District courts within our circuit have reached opposite conclusions; some have held that issue exhaustion is required under

§ 3582(c)(1)(A)),[1] others have found it is not required.[2] While this question of whether § 3582(c)(1)(A) requires issue exhaustion has not been directly addressed by the Sixth Circuit, its opinion in *Alam* is instructive. The Sixth Circuit explained that the mandatory exhaustion requirement ensures prison administrators "can investigate the gravity of the conditions supporting compassionate release and the likelihood that the conditions will persist," and it stressed that "[t]hese are not interests we should lightly dismiss or re-prioritize." *Alam*, 960 F.3d at 835. The Sixth Circuit also emphasized that the exhaustion requirement was designed to prevent prisoners "from charging straight to federal court," *id.*, and helped to implement "an orderly system for reviewing compassionate-release applications, not one that incentivizes line jumping." *Id.* at 834.

As other district courts in this circuit have noted, permitting a prisoner to include entirely new arguments and issues in a motion to the Court that were not included in the BOP administrative request would "incentivize exactly the kind of 'line jumping' and 'charging straight to federal court'" that the Sixth Circuit cautioned administrative exhaustion is meant to prevent. *Gough*, 2022 WL 586782 at *2 (quoting *Wardle*, 2021 WL 4822827 at *2). Although Smith asserts that he "submitted several 'Inmate Request[s]'" inquiring about the level of arsenic in the water," [DE 121 at 462] he does not dispute that he failed to include his arsenic argument in his BOP request for compassionate release. Accordingly, the Court finds that Smith has not exhausted his administrative remedies on this issue, and because exhaustion is a "mandatory condition" the government has not waived, the Court must enforce it. *Alam*, 960 F.3d at 833. Although the Court

---

[1] *See e.g., United States v. Wardle*, No. CR 5:18-57-KKC, 2021 WL 4822827, at *2 (E.D. Ky. Oct. 14, 2021) ("The Sixth Circuit's opinion in *Alam* suggests that issue exhaustion is required under § 3582(c)(1)(A). The important purposes of the administrative exhaustion would be undermined if prisoners could present entirely new arguments and issues in a motion without first presenting those arguments to the BOP.") (citation omitted).

[2] *See e.g., United States v. Poole*, 472 F. Supp. 3d 450, 456 (W.D. Tenn. 2020) ("The statute contains no language requiring that a court consider only arguments raised first to the BOP or requiring a defendant to raise each ground for relief to the BOP.")

cannot consider Smith's argument regarding arsenic in the prison's water, Smith has exhausted his administrative remedies on the first three grounds and the Court considers his motion on the merits on these issues.[3]

### B. Sixth Circuit *Jones* Analysis.

A district court has limited authority to modify a sentence. *United States v. Ruffin*, 978 F.3d 1000, 1003 (6th Cir. 2020). "Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013). Section 3582(c)(1)(A) grants that authority in certain limited circumstances. It provides, in part:

---

[3] Even if Smith had exhausted his administrative remedies on the arsenic issue, his argument is, in essence, an Eighth Amendment claim, and "a compassionate release proceeding is not the proper vehicle to seek relief for a claimed constitutional violation." *United States v. Carr*, No. 20-5784, 2020 U.S. App. LEXIS 33773, at *5 (6th Cir. Oct. 26, 2020) (citing *Hinneburg v. Miron*, 676 F. App'x 483, 486 (6th Cir. 2017)); *see e.g., United States v. Duncan*, No. CR 7:17-01-KKC, 2020 WL 6196254, at *3,*7 (E.D. Ky. Oct. 22, 2020) (explaining that, to the extent a prisoner is asserting an Eighth Amendment claim as a way to seek release from prison, "[s]uch a claim is properly brought as a claim for habeas relief under 28 U.S.C. § 2241"); *United States v. Pelletier*, No. 3:16-cr-00147-8, 2020 WL 6135052, at *2, (M.D. Tenn. Oct. 19, 2020) (explaining, in response to defendant's argument that "prisoner conditions during the pandemic amount to cruel and unusual punishment," that "[c]ompassionate release is not the proper vehicle to raise his constitutional claims, which are best addressed under 28 U.S.C. § 2255 or 42 U.S.C. § 1983"); *United States v. Rodriguez-Collazo*, No. 14-CR-00378-JMY, 2020 WL 2126756, at *3, (E.D. Pa. May 4, 2020) ("[d]efendant contends that the current conditions at Elkton FCI violate his [ ] Eighth Amendment rights. However, these claims—which the [c]ourt construes as challenging the execution of his sentence at Elkton FCI—are not properly brought in a motion for compassionate release"); *United States v. Numann*, No. 3:16-CR-00025-TMB, 2020 WL 1977117, at *4, (D. Alaska Apr. 24, 2020) (prisoner's "claims [ ] relating to the manner and conditions of confinement [ ] are not properly brought in a motion for compassionate release"). Moreover, Smith's only evidence on this issue is an alleged memorandum entitled "Important Information about your Drinking Water," "posted and issued" at a different facility than the one Smith is currently incarcerated at. [DE 121 at 461]. Smith has provided no evidence that there is arsenic in the water at FCI Phoenix. As a result, even if a motion for compassionate release were the proper vehicle to bring this argument, Smith "has not satisfied his burden under § 3582(c)(1)(A) to show that the conditions of his confinement are so extraordinary and compelling as to justify release." *United States v. Gordon,* No. 23-3188, 2024 WL 1005772, at *3 (6th Cir. Mar. 4, 2024).

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i). Subpart (ii) of this portion of the statute provides "a separate basis for compassionate release tied to the defendant's age and years in prison." *Ruffin*, 978 F.3d at 1003.

"Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory." *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020). That said, district courts must "supply specific factual reasons for their compassionate release decisions." *Id.* at 1101-02.

As set forth by the Sixth Circuit, the decision regarding whether to reduce a term of imprisonment pursuant to Section 3582(c)(1)(A) involves a three-step analysis. *Id.*; *see also* 18 U.S.C. § 3582(c)(1)(A)(i); *Ruffin*, 978 F.3d at 1004. First, a court must find whether extraordinary and compelling reasons warrant a sentence reduction or whether the defendant fulfills the requirements of §3582(c)(1)(A)(ii). *Jones*, 980 F.3d 1098 at 1108 n.12. Second, a court must find whether a reduction is consistent with applicable Sentencing Commission policy statements. *Id.* Third, a court must consider any applicable Section 3553(a) factors. Based on this inquiry the Court determines whether, in its discretion, the reduction authorized is warranted in whole or in part under the circumstances of the case. *Id.* District courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking. *United States v. Jackson*, No. 22-6097, 2023 WL 9023349, at *1 (6th Cir. Nov. 14, 2023) (citing *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021)).

As to the third step, consideration of the § 3553(a) factors, the Court must "consider such things as the characteristics of the defendant, the nature of the offense, and various penological goals, such as the need to promote respect for law and to protect the public." *Ruffin*, 978 F.3d at 1005; *see Jones*, 980 F.3d at 1114.

> Among the variety of items that courts have considered in this step are conditions at the place of incarceration, the defendant's health issues, whether the defendant is receiving medical treatment for his or her health issues, the defendant's behavior in prison, the type of offense(s) for which the defendant was convicted, whether the defendant had prior criminal convictions (and, if so, how many and the seriousness of such crimes), whether the defendant had prior juvenile convictions, whether the defendant previously complied with any presentence or post-incarceration conditions, the amount of the sentence that the defendant has served to date, whether the court varied downward from the guidelines range when imposing the sentence, whether the defendant has had a drug addiction, the defendant's successful participation in substance abuse programming or other rehabilitation efforts while incarcerated, the defendant's successful participation in educational or vocational training while incarcerated, and whether the defendant took responsibility for his or her actions.

*United States, v. Pooler*, No. 3:18-CR-00137, 2020 WL 7046964, at *5 (S.D. Ohio Dec. 1, 2020) (citing *Jones*, 980 F.3d at 1114; *Ruffin*, 978 F.3d at 1008-09); *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (a court should consider "the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable"). But post-sentencing rehabilitation, standing alone, "does not rise to the level of an extraordinary and compelling reason for granting compassionate release." *United States v. Harper*, No. 22-1291, 2023 WL 10677931, at *3 (6th Cir. Dec. 12, 2023); *Jackson,* 2023 WL 9023349, at *2 (citing *Ruffin*, 978 F.3d at 1004).

The defendant bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582.  *See* United States v. Karr, No. 6:17-CR-25-REW, 2020 WL 774363, at *6 (E.D. Ky. Feb. 18, 2020).

**1. *Extraordinary and Compelling Justification for Compassionate Release and Consistency with Sentencing Policy Statements***

      i.    <u>Risk of COVID-19</u>

Smith briefly argues extraordinary and compelling reasons exist because he is "more likely to get very sick from COVID-19 and suffer severe infection based on his age and medical conditions." [DE 121 at 460]. However, the Sixth Circuit is clear that "given the availability of effective COVID-19 vaccines, a defendant's imprisonment during the pandemic no longer presents an extraordinary and compelling reason for compassionate release, even if he has serious medical conditions." *United States v. Thompson*, No. 23-5352, 2024 U.S. App. LEXIS 613, at *4 (6th Cir. Jan. 9, 2024) (citing *United States v. Traylor*, 16 F.4th 485, 487 (6th Cir. 2021); *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). Smith's medical records indicate that he has received two doses of the COVID-19 vaccine. [DE 121-1 at 474]. As the Sixth Circuit explained, "[the prisoner's] risk from COVID-19 is largely the same whether inside or outside prison. Thus, the COVID-19 pandemic and [the prisoner's] health conditions do not constitute extraordinary and compelling reasons for early release." *Thompson*, 2024 U.S. App. LEXIS 613 at *4. As a result, Smith's risk of infection from COVID-19 does not rise to the level of an extraordinary or compelling reason for early release.

      ii.    <u>BOP Ability to Care for Medical Conditions</u>

Smith also argues that the FCI Phoenix where he is incarcerated is not properly equipped to handle his medical conditions, which increases his risk of contracting COVID-19. [DE 121 at 464-68]. Smith specifically argues that FCI Phoenix is violating his Eighth Amendment rights in failing to provide medical care for his obesity, hypertension, substance abuse, and complications arising from twenty years of tobacco use. [*Id*. at 460; 467].

As noted above—while a claim for deliberate indifference to a prisoner's serious medical needs is actionable under 42 U.S.C. § 1983, "a compassionate release proceeding is not the proper vehicle to seek relief for a claimed constitutional violation." *Pelletier*, 2020 WL 6135052, at *2, (explaining, in response to defendant's argument that "prisoner conditions during the pandemic amount to cruel and unusual punishment," that "[c]ompassionate release is not the proper vehicle to raise his constitutional claims, which are best addressed under 28 U.S.C. § 2255 or 42 U.S.C. § 1983").  To the extent that Smith argues FCI Phoenix's inability to handle his medical conditions puts him at a higher risk of contracting COVID-19, as noted previously, Smith's risk of infection from COVID-19 does not rise to the level of an extraordinary or compelling reason for early release.

Smith also fails to provide any evidence that FCI Phoenix is unable to care for his medical conditions. Smith cites an article from Forbes News Magazine and an audit of the "Federal Bureau of Prisons Comprehensive Medical Services Contracts Awarded to the University of Massachusetts Medical School." [DE 121 at 464]. Smith argues that although neither of these addressed the quality of medical care at FCI Phoenix, "it is obvious that the level of care afforded Petitioner is no different than that outlined" in the Massachusetts audit, [*id.*], and "based on the Forbes Article it is clear that "any" [sic] prisoner in the BOP is at risk of life and limb, due to inadequate medical care." [*Id.* at 465]. Courts routinely find that prisoners have failed to show an extraordinary and compelling reason for early release based upon inadequate medical care when the prisoner does not provide medical records showing that he requested and was denied necessary care.[4] *See e.g., Elias*, 984 F.3d at 520 (holding district court could deny motion for compassionate

---

[4] Not only do Smith's medical records fail to show that he requested and was deny necessary care, they indicate that Smith was receiving care—Smith had been prescribed and was receiving medication, had three upcoming appointments with a Physician, Optometrist, and Nurse, and had pending appointments for "EKG" and "Blood Pressure." [DE 121-1 at 474].

release based upon failure to provide medical records); *United States v. Sexton*, No. 2:19-cr-192, 2021 U.S. Dist. LEXIS 7217, at *6 (S.D. Ohio Jan. 14, 2021) (denying motion for compassionate release when prisoner failed to provide the court with evidence "that he requested and was denied necessary care."); *United States v. Rodriguez-Campana*, 519 F. Supp. 3d 1159, 2021 WL 602607, at *4-5 (S.D. Fla. 2021) (denying motion for compassionate release for an inmate who suffered from hypertension, high cholesterol, prediabetes, and had a history of lung problems because he had failed to demonstrate that "any of his present ailments are terminal, that they substantially diminish his ability to provide self-care within the correctional facility, or that they are not being properly attended to by the BOP").

Moreover, Smith's medical conditions were facts known to the Court before sentencing [*see* DE 101 at 386-87], and Smith has offered no evidence that his conditions have worsened since. As a result, Smith has failed to show that his medical care rises to the level of an extraordinary and compelling reason for early release. *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022) ("McKinnie's hypertension and obesity are not new developments; these facts were before the district court at the time of his sentencing. But facts that existed at the time of sentencing do not constitute an extraordinary and compelling reason warranting a subsequent sentence reduction. And as McKinnie has offered no evidence as to how these conditions have worsened since his sentencing, he fails to demonstrate how they justify a sentence reduction").

    iii.   Status as Caretaker

Finally, Smith argues that extraordinary and compelling reasons for early release exist because at the time of his arrest, he was the sole caretaker for his mother, who is 80 years old and suffers from multiple medical conditions. [DE 121 at 460]. Yet as noted above, "facts that existed at the time of sentencing do not constitute an extraordinary and compelling reason warranting a subsequent sentence reduction." *McKinnie*, 24 F.4th at 588 (citing *Lemons*, 15 F.4th at 751). To

the extent that Smith argues the facts regarding his caretaker status have changed, the Sentencing Commission's policy statement states that "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent," can be an extraordinary and compelling reason for early release. U.S.S.G. 1B1.13(b)(3)(C). In evaluating "incapacitation," courts have looked to the BOP guidelines for handling inmate compassionate release requests based on the incapacitation of a family member. *See e.g., United States v. Walker*, 2024 U.S. Dist. LEXIS 25188, at *8 (D.N.J. Feb. 13, 2024); (*United States v. Collins*, 2020 U.S. Dist. LEXIS 5001, 2020 WL 136859, at *4 (D. Kan. Jan. 13, 2020). The BOP guidelines have defined incapacitation as "a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse . . . is completely disabled, meaning that the spouse . . . cannot carry on any self-care and is totally confined to a bed or chair." *Walker*, 2024 U.S. Dist. LEXIS 25188, at *8 (quoting *Collins*, 2020 WL 136859) (citing BOP Program Statement § 5050.502)). But other than his assertion in his motion, Smith provides neither evidence that his mother is incapacitated, nor that he is the only person available to take care of his mother. While Smith states that his mother "suffers all of the debilitating illnesses common to the elderly" and "has suffered several mishaps" during his incarceration, such as a car accident and a fall that left her hospitalized, [DE 121 at 461], Smith has not provided any evidence that she is incapacitated.[5]

---

[5] As the district court in *Walker* noted, Courts have also relied upon the BOP Program Statement regarding the "kind of evidence a defendant could use to show his or her family circumstances constituted extraordinary and compelling reasons for his or her compassionate release." 2024 U.S. Dist. LEXIS 25188, at *8-9 n.2. When evaluating the incapacitation of an individual, such evidence "include[es], but [is]not limited to, a statement and verifiable medical documentation regarding the [individual's] incapacitation, a statement and letters of documentation that the inmate is the only family member capable of caring for the [individual], and a statement and documentation regarding the inmate's release plan." *Id*. (citing *United States v. Jones*, No. 13-252, 2021 U.S. Dist. LEXIS 50950, 2021 WL 1060218, at *10 (W.D. Pa. Mar. 18, 2021); *Collins*, 2020 WL 136859, at *4.)

Moreover, Smith's presentence investigation report states that Smith's mother referred to him as her "*main*" caretaker—but not her only caretaker. [DE 101 at 386] (emphasis added). Accordingly, Smith has failed to show an extraordinary and compelling reason for early release based on his status as a caretaker for his mother. *See e.g., United States v. Combs,* No. 2:19-CR-138, 2023 WL 6997117, at *2 (S.D. Ohio Oct. 24, 2023) ("This Court has declined to find that a defendant's ailing parent constitutes an "extraordinary and compelling reason" justifying release.); *United States v. Ingram*, No. 2:14-cr-40, 2019 U.S. Dist. LEXIS 118304, at *4-5 (S.D. Ohio July 16, 2019) ("While the Court empathizes with the Ingram family's difficult situation and understands that Mrs. Ingram's medical conditions are no doubt serious, family circumstances that constitute 'extraordinary and compelling reasons' simply do not include Ingram's mother. Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary."); *United States v. Brewer*, 2022 U.S. Dist. LEXIS 70047, 2022 WL 1125797, at *2 (E.D. Mich. Apr. 15, 2022) ("In general, having a sick or aging parent is not an extraordinary circumstance to release a prisoner.").

After considering the grounds in Smith's motions, the Court finds that none of Smith's arguments rise to the level of extraordinary and compelling reasons for Smith's early release.

### 2. Section 3553(a) Factors

Next, Court must determine whether such relief is supported by the § 3553(a) factors. Section 3553(a)'s factors include:

> The nature and circumstances of the offense and the history and characteristics of the defendant and the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; and (C) to protect the public from further crimes of the defendant.
> 18 U.S.C. § 3553(a)(1-2).

The Court reviewed the record as a whole and independently weighed the sentencing factors in § 3553(a).

Here, the § 3553(a) factors counsel against compassionate release. Smith pled guilty to conspiracy to possess and distribute over 500 grams of a mixture or substance containing methamphetamine. [DE 88 at 314]. Further, Smith's "role in the conspiracy was to personally transport the methamphetamine by van from California to Kentucky," transporting "a total of 45 packages" of over 500 grams of a mixture or substance containing methamphetamine. [*Id.*]. Additionally, this conviction was neither his first criminal conviction, nor were they his first convictions for drug crimes. [DE 101 at 382-83]. Smith has failed to provide an extraordinary or compelling reason to adjust his original sentence. Releasing Smith after serving only a portion of his 78-month sentence would minimize the seriousness of his crimes, fail to afford adequate deterrence to criminal conduct, and would be unjust in light of the serious nature of his crimes.

### III. Motion for Appointment of Counsel [DE 122].

Finally, Smith requests appointment of counsel. [DE 122 at 494]. The Sixth Amendment secures the right of a criminal defendant who faces incarceration to be represented by counsel at all "critical stages" of the criminal process. *United States v. Wade*, 388 U.S. 218, 224 (1967). However, the constitutional right to assistance of counsel does not extend to motions for post-conviction relief. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Shedwick v. Warden N. Cent. Corr. Inst.*, No. 16-3203, 2016 WL 11005052 (6th Cir. Dec. 30, 2016) ("[T]here is no right to counsel in a post-conviction action."). The decision of whether to appoint counsel to seek compassionate release is a decision within the sound discretion of the Court. *See United States v. Inman*, No. 3:20-CR-00154, 2022 WL 304660, at *1 (M.D. Tenn. Feb. 1, 2022) (citing *United States v. Stephens*, No. 06-CR-20365, 2020 WL 3250226, at *2 (E.D. Mich. June 16, 2020)). "In

exercising discretion as to whether to appoint counsel, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court." *United States v. Woods*, No. 2:03-CR-069, 2020 WL 5805324, at *3 (E.D. Tenn. Sept. 28, 2020) (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)).

Smith fails to present any unique circumstances justifying appointment of counsel and fails to articulate why he is unable to present his request for compassionate release pro se. A compassionate release request is not a particularly complex claim factually or legally. *See Inman*, 2022 WL 304660, at *1 (citing *United States v. Drayton*, No. CR 10-20018-01-KHV, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020) (denying motion to appoint counsel related to motion for compassionate release and noting that compassionate release claims are not particularly complex factually or legally and that the defendant appeared able to adequately present his claim)). Upon review, the Court finds that the issues involved in Smith's request for compassionate release and sentence reduction are not complex or beyond the capability of an ordinary *pro se* litigant. His request for appointment of counsel is **DENIED.**

## IV.   CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Smith's motions for compassionate release and sentence reduction under 18 U.S.C. 3582(c)(1)(A) [DE 121; 122] are **DENIED.**

(2) Smith's request for appointment of counsel [DE 122] is **DENIED.**

Rebecca Grady Jennings, District Judge

United States District Court

August 2, 2024